and *Blue.* The State argues that although the defendants in those cases each proffered Quijano as a witness, they did not, like Buck, elicit race-related testimony on direct examination; instead, the prosecution first did so on cross-examination.

This distinction is accurate but not necessarily substantial. The context in which Buck's counsel addressed race differed markedly from how the prosecutor used it. On direct examination, Quijano referred to race as part of his overall opinion that Buck would pose a low threat to society were he imprisoned. This is exactly how the State has characterized Quijano's testimony. *E. g.*, Thaler's Reply to Buck's Motion for Relief From Judgment and Motion for Stay of Execution in No. 4:04–cv–03965 (SD Tex.), Doc. 30, pp. 15–16 ("In this case, first on direct examination by the defense, Dr. Quijano merely identified race as one statistical factor and pointed out that African-Americans were overrepresented in the criminal justice system; he did not state a causal relationship, nor did he link this statistic to Buck as an individual"). Buck did not argue that his race made him *less* dangerous, and the prosecutor had no need to revisit the issue. But she did, in a question specifically designed to persuade the jury that Buck's race made him *more* dangerous and that, in part on this basis, he should be sentenced to death.

The then-attorney general of Texas recognized that "it is inappropriate to allow race to be considered as a factor in our criminal justice system." Record, Doc. 27–5, at 30 (internal quotation marks omitted). Whether the District Court would accord any weight to the State's purported distinctions between Buck's case and the others is a question which that court should decide in the first instance, based on an unobscured record. Especially in light of the capital nature of this case and the express recognition by a Texas attorney general that the relevant testimony was inappropriately race charged, Buck has presented issues that "deserve encouragement to proceed further." *Miller-El,* 537 U. S., at 327.

No. 11–6692. BEVERLY *v.* UNITED STATES. C. A. 4th Cir. Certiorari denied. JUSTICE KAGAN took no part in the consideration or decision of this petition. ▮

No. 11–6725. SERRANO *v.* UNITED STATES. C. A. 11th Cir. Certiorari denied. JUSTICE KAGAN took no part in the consid-

eration or decision of this petition.

No. 11–6727. MORALES *v.* UNITED STATES. C. A. 2d Cir. Certiorari denied. JUSTICE SOTOMAYOR took no part in the consideration or decision of this petition.

No. 10–1508. ANSARI *v.* NCS PEARSON, INC., DBA PEARSON VUE, ET AL., *ante,* p. 825; and

No. 11–5473. KAMPFER *v.* REU ET AL., *ante,* p. 909. Petitions for rehearing denied.

## NOVEMBER 9, 2011

No. 11–547. HCP, INC., FKA HEALTH CARE PROPERTY INVESTORS, INC. *v.* VENTAS, INC. C. A. 6th Cir. Certiorari dismissed under this Court's Rule 46.1.

No. 11A446 (11–6718). JUNIPER *v.* KELLY, WARDEN. Sup. Ct. Va. Application for stay of execution of sentence of death, presented to THE CHIEF JUSTICE, and by him referred to the Court, denied.

## NOVEMBER 14, 2011

No. 10–851. STOVALL, WARDEN *v.* MILLER. C. A. 6th Cir. Certiorari granted, judgment vacated, and case remanded for further consideration in light of *Greene* v. *Fisher, ante,* p. 34.

No. 11–282. BRANCH BANKING & TRUST *v.* GORDON. C. A. 11th Cir. Certiorari granted, judgment vacated, and case remanded for further consideration in light of *AT&T Mobility LLC* v. *Concepcion,* 563 U. S. 333 (2011).